1

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION

 3   UNITED STATES OF AMERICA      ()        CRIMINAL ACTION
                                   ()        NO. H-07-272
 4   VS.                           ()        HOUSTON, TEXAS
                                   ()        JANUARY 12, 2011
 5   JORGE GUSTAVO AREVALO-KESSLER ()        10:22 A.M.

 6

 7                      TRANSCRIPT OF SENTENCING
                  BEFORE THE HONORABLE GRAY H. MILLER

 8

 9   APPEARANCES:

10   FOR THE GOVERNMENT:        Mr. Claude D. Hippard
                                Assistant United States Attorney
11                              1000 Louisiana, Suite 2300
                                Houston, Texas  77002
12

13   FOR THE DEFENDANT:         Mr. Edward P. Sillas
                                Edward Sillas & Assoc.
14                              8400 Howard Drive
                                Houston, Texas  77017
15

16   ALSO PRESENT:              Mr. Ramon Del Villar
                                Official Interpreter
17

18
     COURT REPORTER:            Anita G. Manley
19                              Official Court Reporter
                                515 Rusk, 8th Floor
20                              Houston, Texas  77002

21

22
     Proceedings recorded by stenographic means, transcript produced
23   by computer.

24

25
```

2

1                    P R O C E E D I N G S

2            THE COURT:  All right.  Final case, Case No. 7-272,

3    United States of America versus Jorge Gustavo Arevalo-Kessler.

4            MR. HIPPARD:  Claude Hippard for the United States,

5    Your Honor.

6            MR. SILLAS:  Eduardo Sillas for Mr. Jorge

7    Arevalo-Kessler.

8            THE COURT:  Good morning, gentlemen.

9                 All right.  Let the record reflect that the

10    defendant is present and has an interpreter who will be

11    interpreting the proceedings.  Right?

12            THE INTERPRETER:  No, Your Honor.

13            THE COURT:  Doesn't need an interpreter?

14            THE INTERPRETER:  He's not using the headset to help

15    him.  He understands English.

16            THE COURT:  All right.  All right.  Thank you.

17                 All right.  You do not need an interpreter this

18    morning, correct, sir?

19            THE DEFENDANT:  No, sir.

20            THE COURT:  All right.  Very good.  Thank you.

21                 This is a sentencing hearing in your case, and I

22    want to start by briefly describing to you the Court's

23    sentencing procedures.

24                 The Supreme Court has held in the *Booker* case

25    that the sentencing guidelines are advisory and not mandatory

1    for judges.  *Booker* requires a sentencing court to consider the

2    guideline ranges, but it permits the Court to tailor the

3    sentencing in light of other statutory concerns as well.

4         The Court, in the exercise of its sentencing

5    discretion, therefore, will rely on the factors set out in

6    Section 3553(a) to fashion an appropriate sentence in your case

7    to achieve the Congressionally mandated purposes of sentencing

8    as set forth in the Sentencing Reform Act of 1984.

9         The Court will endeavor to faithfully apply the

10   directives within the guidelines in their entirety to determine

11   the total offense level and the criminal history category under

12   the guidelines.  Thereafter, the Court will exercise its

13   discretion to determine the appropriate sentence.

14        In doing so, the Court will give considerable

15   weight to the sentencing range calculated under the guidelines.

16   Any comments by the Court in the course of this sentencing are

17   not to be construed as an indication that the Court in fact

18   believes that the guidelines are mandatory or that they

19   constrain the Court's ultimate sentencing discretion.

20        The standard of proof for factual findings in

21   connection with sentencing is preponderance of the evidence.

22   And in determining whether that standard is met, historically,

23   a presentence report is generally considered sufficiently

24   reliable to be used by the trial court as evidence in making

25   the factual determinations which are required under the

4

1   Sentencing Guidelines.

2               Now, in your case, I have reviewed the

3   presentence report which was prepared by the probation

4   department.

5               I think the Government has no objections,

6   correct, Mr. Hippard?

7       MR. HIPPARD:  That is correct, Your Honor.

8       THE COURT:  All right.  I did review the objections

9   which were filed on behalf of the defendant, specifically with

10  respect to Paragraph 50 and the amount of relevant conduct in

11  terms of the amount of money that the defendant is held

12  responsible for laundering.

13              And also, I think -- did you object also to his

14  role as a manager?

15      MR. SILLAS:  That's correct, Your Honor.

16      THE COURT:  All right.  Let's see.  I've also reviewed

17  the Government's motion, 5K motion, which you've received a

18  copy of, Mr. Sillas?

19      MR. SILLAS:  Yes, I have, Your Honor.

20      THE COURT:  And I also have been handed this morning

21  some letters --

22      MR. SILLAS:  That's correct.

23      THE COURT:  -- written on behalf of the defendant,

24  which I have taken the opportunity to review.  And all of that

25  will be made part of the record in this case.

1          Mr. Sillas, would you like to be heard on the

2  objections that you have filed?

3          MR. SILLAS:  Yes, with the Court's permission.

4          THE COURT:  Yes.

5          MR. SILLAS:  Thank you.  May I proceed, Your Honor?

6          THE COURT:  Certainly.

7          MR. SILLAS:  Judge, first and foremost, I'd like to

8  beg the Court's patience.  Mr. Kessler has a severe hearing

9  problem.  So, if we run into a situation where I have to repeat

10  myself or he would request the Court to repeat itself, I don't

11  want the Court to be of the opinion that he's disrespecting

12  you; but he does have a hearing problem.  It's referenced in

13  the presentence report.

14          Very briefly, Judge, I've been representing Mr.

15  Kessler now for approximately nine months, and he has been

16  visited no less than 20 times at the Federal Detention Center

17  and also at the Joe Corley Unit.

18          Now, we are -- my client was originally indicted

19  back in June 28th of 2007.  There was a superseding indictment

20  that came down on May 29th of 2008.  The charge for which Mr.

21  Kessler was ultimately responsible for was conspiracy to

22  launder money instruments.

23          Now, this specific charge has a 20-year cap.

24  And, consequently, after reviewing the PSR, we became concerned

25  based on the fact that the monetary amount that was used in

6

 1   determining how many base offense levels he would be increased

 2   was considerable in view of the fact that it was $7 million and

 3   above.

 4                However, we would like to point out to the Court

 5   that when we were rearraigned, there was a plea agreement and

 6   the plea agreement became part of the record and it was

 7   referenced in the plea agreement that the amount that was

 8   referenced in the agreement, and it was our understanding, was

 9   an amount that was less than the $7 million that divides

10   whether my client gets a 20-level increase versus an 18-level

11   increase.

12                So, our position is that we agreed with the

13   Government that there was a plea agreement and that the amount

14   stated in the plea agreement was, in fact, $5.1 million versus

15   the $8.1 million that are referenced in the offense report.

16                I would suggest to the Court, with all due

17   respect, and also to the Federal Government, that that was the

18   benefit or that was the basis for the bargain that we executed

19   the contracts at the time.  We realize that under Rule 11 the

20   Court is not bound or obligated to honor the plea agreement

21   that we had.  We would merely point out to the Court that we

22   would like the Court to recognize the fact that we relied on

23   the fact that $5.1 million, okay, was what we bargained for.

24                And with that being said, I know that a two base

25   offense level may not seem like a whole lot, but when you get

 1  up into the high end of the guidelines, it ends up being

 2  substantial.  That would be our first objection with respect to

 3  the monetary amount.

 4          THE COURT:  All right.

 5          MR. SILLAS:  Now, we had a second objection, with the

 6  Court's permission.

 7          THE COURT:  Uh-huh.

 8          MR. SILLAS:  The second objection basically dealt

 9  with -- well, let me go back with the Court's permission, back

10  to the first objection.

11          I would further go ahead and present to the Court

12  that this incident that took place supposedly in a foreign

13  jurisdiction was in Panama.  That was way back in 2002.  I

14  would like to inform the Court that Mr. Kessler was not

15  arrested as a result of whatever was found at the airplane --

16  or in the airplane.

17          Now, Mr. Kessler flew that plane in on October

18  the 28th of 2002, and it wasn't until 15 days later that that

19  plane was discovered -- that that plane supposedly had some

20  proceeds from drug distribution that were found secreted

21  somewhere within one of the wings of the plane.

22          At end of the day, the Court needs to be aware

23  that present with the defendant were three other individuals:

24  a co-pilot and, I believe, a navigator, and a passenger, a

25  passenger who was Mr. Sanabria.  And Mr. Sanabria was before

1  Judge Lee Rosenthal.  His case, Mr. Sanabria's case, is a

2  related case to Mr. Kessler's case.  And I share that with you

3  to take me into the second objection.

4            The second objection is that my client, in our

5  opinion, was not a manager.  On that specific day, the day that

6  the plane had some mechanical problems in Panama, Mr. Sanabria

7  was there managing the operation of the Flores-Cacho drug

8  trafficking organization.

9            With that being said, we would suggest to the

10  Court that my client was simply a chain or -- correction -- a

11  link in the chain and was simply following orders.  My client,

12  being the captain of the airplane, stayed there for

13  approximately 15 to 20 days until all of the repairs were

14  secured on the plane.  He did not leave.  It was Mr. Sanabria

15  who had concerns, whatever concerns they were, but he

16  immediately left after the plane had the mechanical malfunction

17  and ultimately was seized.

18            We're of the opinion, and we're asking this

19  Court, that my client not be classified as a manager, number

20  one.  Number two, we're also of the opinion that -- we're

21  asking this Court to go ahead and allow my client to receive

22  the benefit of the bargain of the plea agreement and, that is,

23  that he be accounted -- or accountable for less than 7 million

24  and, more specifically, at 5.1 million.

25            THE COURT:  All right.  Thank you, Mr. Sillas.

9

1        MR. SILLAS:  Thank you, Judge.

2        THE COURT:  Mr. Hippard, I know you filed a written

3   response to the objections.  Is there anything you'd like to

4   say?

5        MR. HIPPARD:  Your Honor, pretty much it's all been

6   put before the Court in writing without reiterating everything.

7   You know, I stand on what has been filed with the Court, and I

8   concur with the findings of the probation office, Mr. Renteria.

9   All of that being said, I mean, I have filed a motion for 5K,

10  which pretty much means you get to do whatever you want.  So --

11       THE COURT:  Don't I always get to do that?

12       MR. HIPPARD:  Of course, Your Honor.  In any event,

13  taking things into consideration, you know, for where the Court

14  wants to go with this, you know, the Government understands.

15  But it is what it is and management is management and the

16  dollar amount, whether it's relevant conduct is relevant

17  conduct.  And I think the PSR is correct in its findings.

18       THE COURT:  All right.  I'm going to overrule your

19  objections based upon what I see in the presentence report and

20  also the response filed by the probation department to your

21  objections and Mr. Hippard's response.  However, I am going to

22  grant the Government's motion for downward departure in this

23  case.

24       MR. SILLAS:  Yes, Your Honor.

25       THE COURT:  In the grand scheme of things, I'm not

1    sure it really makes a lot of difference, but I am going to

2    adopt the presentence report.  And these would be the Court's

3    guidelines findings and legal conclusions:

4                The total offense level is a 38 with a criminal

5    history category of I.  That yields a recommended period of

6    imprisonment of 235 to 240, which is the max in federal prison,

7    a period of supervised release of two to three years, a fine

8    range of 25,000 to 16,282,180, and a special assessment of

9    $100.

10               Now, I have reviewed the Government's 5K motion

11   in this case.  So, I understand the Government's position with

12   respect to sentencing is a hundred and --

13        MR. HIPPARD:  -- 56 months.

14        THE COURT:  156 months, based on the 5K.

15               All right.  Mr. Sillas, what is your position

16   with respect to sentencing?

17        MR. SILLAS:  Judge, a couple of things with respect to

18   sentencing.  First of all, I would like to call the Court's

19   attention to the fact that my client was detained from April

20   7th, Judge, of 2008 based on an open warrant for an indictment

21   that was issued out of the Southern District of Texas.

22               My client, if you take into consideration the

23   time that he was, quote, unquote, detained on April 7th when he

24   went into the U.S. Embassy on an open warrant, that would mean

25   that he would be entitled to 33 months.  The Court should also

1    be informed of the fact that during the 33 months that he was

2    incarcerated, he was in solitary confinement.

3                When he arrived to the United States -- or I

4    should say, when he was first arrested, he was weighing 250,

5    260.  When he left the solitary confinement, 24 months after

6    the whole process worked its way through, my client arrived

7    here looking like a prisoner of war, weighing about 130 to 140

8    pounds, if that much.  He had ulcers on his feet.  You could

9    see the bones on his ribcage.  He's been through a lot during

10   the whole process.

11               He was at a maximum security prison in Mexico at

12   a place called -- I think it's called Almoloya or Altaloya.

13   And recognizing that, I would ask the Court to go ahead and

14   give my client the 33 months based on what's written in the PSR

15   report.  And I would call the Court's attention to the specific

16   location where that information is stated in the PSR report.  I

17   believe that would be Page 16, Judge, Item No. 74.  And I think

18   the Court's electronic information clearly reflects the dates

19   of the indictments, of the first indictment and the superseding

20   indictment.

21               The other thing that I would ask the Court to

22   consider is the fact that my client does have a severe hearing

23   problem.  Having spent two years in a maximum security prison,

24   I'm sure, was a substantial amount of punishment for him.  He

25   has, in fact, been available and has participated in

1    discussions with the Federal Government.  Therefore, as

2    evidenced by the Government's request for the 5K1, I'd ask the

3    Court to entertain, in view of his two-year incarceration in

4    solitary confinement, that the Court also take into

5    consideration the medical problems that he has.

6                I believe that's all at this time, Judge.  And I

7    know that my client is wanting to go ahead and take advantage

8    of his opportunity for allocution and visit with the Court for

9    a few minutes with the Court's permission.

10               THE COURT:  All right.  Thank you, Mr. Sillas.

11               MR. SILLAS:  Thank you, Judge.

12           (Defendant responding in English without the aid of the

13   interpreter:)

14               THE DEFENDANT:  Okay.  With all respect, Your Honor,

15   and I want to thank you for this opportunity to speak.

16               All this time I've been incarcerated here in the

17   Federal Detention Center, I saw many of the people preparing

18   speeches for me.  They -- they can't hear sentence.  Actually,

19   I have talked to them.  And all these black days, I have

20   thinking I'm -- I'm praying and I just asking the Lord to

21   get -- be near and speak with truth.  And the only thing I want

22   to let you know, Your Honor, is that I have time to think about

23   what I did.  What I did -- I did was wrong.  But any time, in

24   any way -- I mean, I didn't try -- I didn't think to help

25   anybody.  I was acting, blinded by the greed, trying to -- you

1    know, a misunderstanding way to give a better life to my

2    family, which became the worst way of life to my family.  I

3    haven't watched my children for three years.  So, that was a

4    wrong decision.  And I'm completely aware that I make some -- I

5    make wrong things, and I'm really -- I'm really sorry.  I'm

6    really apologize.  And I ask to apologize to the people that

7    you represent.  I mean, what can I tell -- what can I say?  I

8    know I did wrong, and I really am apologize.

9             THE COURT:  All right.

10            MR. SILLAS:  Your Honor, this case is very unique in

11   many ways.  Here you have a very well-educated man who reached

12   the level of a captain in the Mexican Air Force.  He not only

13   was a captain but he also trained so many hundreds of pilots

14   for the Mexican Air Force, number one.

15             Number two, Mr. Kessler is 46 years of age.  He

16   has his wife and his two children waiting for him.  He's had

17   the opportunity to travel all over the world.  Before he got

18   involved in this six- to seven-month conspiracy, he had been

19   offered a job with the Emeritus -- or Emirates Airlines.  So

20   that ought to tell you, to be able to fly that kind of a plane,

21   that tells you what kind of talents that Mr. Jorge Kessler

22   possesses.

23             Not only is he a Mexican, a national, but he's

24   also a German citizen.  He's got dual citizenship.  He has had

25   so many privileges given to him because of his education and

1    his ability to fly the planes.  I mean, he's flown fighter

2    pilot -- or piloted fighter planes.  He's flown commercial

3    jets, small and large.  Unfortunately, like he said, he was

4    blinded by the greed and got himself in the situation that he

5    got himself into.

6              I don't want the Court to be of the opinion that

7    he has spent his time idle while he's been at the Federal

8    Detention Center.  I think the certificates that are before the

9    Court clearly indicate that he does have a tremendous talent.

10   He's very well read.  He speaks three different languages.  And

11   I think that if the Court is compassionate enough to give him

12   the credit that he deserves, I think he will ultimately leave

13   here and go back to his country and continue to be a productive

14   citizen.  That's it, Judge.

15             THE COURT:  Hope you're right.  I hope you're right.

16             MR. SILLAS:  That's correct.

17             THE COURT:  Mr. Hippard, the period of time that he

18   was incarcerated in Mexico from April of '08 to February of '10

19   is 22 months.  Do you have any objection to him --

20             MR. HIPPARD:  The Government has no objection to him

21   receiving credit for that time served.

22             THE COURT:  All right.  And then he obviously will get

23   credit -- certainly get credit from the Bureau of Prisons from

24   the period of time that he's been in custody here in the United

25   States from February 24th up until now, which is a period of a

1    little bit less than a year.  So, he'll get credit for that

2    automatically through the Bureau of Prisons.  But I need to

3    give him the credit on the 22 months; otherwise, I don't think

4    the Bureau of Prisons will do that.  But I will.

5            MR. SILLAS:  Thank you, Your Honor.

6            THE COURT:  All right.

7                    All right.  Then after considering the advisory

8    guidelines and the 5K motion that the Government has filed in

9    this case, it's the Court's opinion that pursuant to the

10   Sentencing Reform Act of 1984, the defendant is committed to

11   the custody of the Bureau of Prisons to be imprisoned for a

12   term of 156 months less 22 months' credit for the period of

13   time he was incarcerated in Mexico, which would be -- check my

14   math.  Is that 134?

15           MR. SILLAS:  That's correct, Your Honor.

16           THE PROBATION OFFICER:  That's correct, Your Honor.

17           THE COURT:  All right.  134 months as to Count 1S.

18                    Upon release from imprisonment, the defendant

19   shall be placed on supervised release for a term of three

20   years.

21                    Within 72 hours of release from the custody of

22   the Bureau of Prisons, the defendant shall report in person to

23   the probation office in the district to which the defendant is

24   released.

25                    While on supervised release, the defendant shall

1    not commit another federal, state, or local crime, shall comply

2    with the standard conditions that have been adopted by this

3    Court, abide by any mandatory conditions required by law, and

4    shall comply with the following additional conditions:

5                    The defendant shall not possess a firearm,

6    ammunition, destructive device, or any other dangerous weapon.

7                    If deported, the defendant is not to reenter the

8    United States illegally.  If the defendant is deported during

9    the period of supervised release, supervision by the probation

10   officer becomes inactive.  If the defendant returns to the

11   United States, the defendant must report immediately to the

12   nearest U.S. Probation Office.  Supervision by the probation

13   officer reactivates automatically upon the defendant's

14   reporting.

15                   The defendant shall also cooperate in the

16   collection of a DNA sample from the defendant if the collection

17   of such a sample is authorized.

18                   It is further ordered that the defendant shall

19   pay to the United States a special assessment of $100.

20                   The Court finds that the defendant does not have

21   the ability to pay a fine, however, and therefore the Court

22   waive the fine in this case.

23                   The $100 special assessment is due immediately

24   through the United States District Court, Southern District of

25   Texas.

1          Mr. Kessler, I do need to advise you of your

2    rights to appeal.  You can appeal your conviction if you

3    believe that your guilty plea was unlawful or involuntary or if

4    there was some other fundamental defect in the proceedings that

5    was not waived by your plea of guilty.  Under certain

6    circumstances, a defendant also has the right to appeal the

7    sentence.  However, a defendant may waive his appeal rights as

8    part of a plea agreement.  And you have entered into a plea

9    agreement in this case which waives some or all of your rights

10   to appeal.  These waivers are generally enforceable, but if you

11   believe the waiver is not valid, you can present that theory to

12   the Court of Appeals.

13          If you do file an appeal in this case, the appeal

14   must be filed within 14 days of the entry of judgment.  If you

15   cannot afford to pay the costs on appeal, you can ask to

16   proceed without paying costs.  And you have the right to have

17   an attorney appointed to represent you on appeal if you cannot

18   afford an attorney.

19          I have a motion here by the Government to dismiss

20   Counts 2, 3, and 6; and I'll sign that.  Those counts are

21   dismissed.

22          All right.  Mr. Hippard, is there anything else

23   from the Government?

24          MR. HIPPARD:  Nothing further, Your Honor.

25          THE COURT:  All right.  Mr. Sillas?

1          MR. SILLAS:  Yes, Judge.  My client has just suggested

2     to me to ask the Court to see if the Court could make a

3     recommendation that he be sent to Seagoville.

4          THE COURT:  I will make that recommendation.  The

5     Bureau of Prisons is not necessarily going to abide by that,

6     but I will recommend it, yes.

7          MR. SILLAS:  Thank you, Judge.

8          THE COURT:  All right.  And good luck to you, sir.

9          MR. SILLAS:  May I be excused, Your Honor?

10          THE COURT:  Yes, you may.

11          MR. HIPPARD:  Thank you, Your Honor.

12          THE COURT:  Thank you.

13       (Concluding at 10:47 a.m.)

14

15     I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE
       RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, TO THE BEST
16     OF MY ABILITY.

17     _____          8/19/15
       ANITA G. MANLEY
18     OFFICIAL COURT REPORTER

19

20

21

22

23

24

25